**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                    Chapter 7

Troy Jason Hoekstra and
Susan Noelle Hoekstra                          BKY File No. 06-42474 NCD

        Debtors.

---

Paul Nei and Rich Danielson,

        Plaintiffs,                             ADV File No. 07-_____

vs.

Troy Hoekstra, individually,

        Defendant.

---

**COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF PARTICULAR DEBT**

---

Plaintiffs Paul Nei and Rich Danielson (collectively hereinafter referred to as "Plaintiffs"), as and for their Complaint against Defendant Troy Hoekstra, individually, ("Defendant or "Debtor"), state and allege as follows:

1.      Plaintiff Paul Nei is a resident of the State of Minnesota.

2.      Plaintiff Rich Danielson is a resident of the State of Minnesota.

3.      Defendant filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code on October 27, 2006.

4.      This adversary proceeding is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157(a) and 1334 and 11 U.S.C. § 523(a)(2)(A).  This Complaint is filed pursuant to Fed. R.

Bankr. P. 7001.

## FACTUAL BACKGROUND

6.      On or about December 28, 2004, Plaintiffs and Defendant entered into a Property

Equity Agreement/Personal Guarantee ("Equity Agreement").  A true and correct copy of the

Equity Agreement is attached hereto as Exhibit A.

7.      The Equity Agreement provides for Plaintiffs to make a loan to Defendant in the

amount of $150,000.00 (the "Loan"), which Loan was to be repaid, together with interest at nine

percent (9%) per annum, upon the sale of a bar/restaurant business known as Superstars Sports

Bar & Grill (the "Business").

8.      The Equity Agreement further provides that the repayment of the Loan is to be

secured by mortgages on two (2) separate parcels of real property located in Stearns County,

Minnesota and Kandiyohi County, Minnesota, respectively and legally described as follows:

> Lot Numbered Seven (7) in Block Numbered Four (4) in "Columbia Square"
> according to the plat and Subdivision thereof made by James H. Plane, on file and
> of record in the office of the Register of Deeds, in and for Stearns County,
> Minnesota.  Said "Columbia Square" being in Town (now City) of St. Cloud,
> according to a plat and survey thereof made by John L. Wilson, and on file and of
> record in the office of Register of Deeds in and for Stearns County, Minnesota,
> said lot being a part of the South Half (S 1/2) of the Southeast Quarter (SE 1/4) of
> Section Eleven (11), Township One Hundred Twenty-Four (124) North, of Range
> Twenty-eight (28) West, together with and subject to all the rights and interest of
> Grantors in that certain party wall agreement dated January 14, 1919 and
> recording on February 7, 1919 at Book 2 of "O" of Assignments and Agreements,
> Page 546 in the office of the County Recorder in and for Stearns County,
> Minnesota

(hereinafter the "Stearns County Property")

AND

Lot 1, Block 3, Park View Subdivision Fourth Addition.
AND
That part of Lot 2, Block 3, Park View Subdivision Fourth Addition, beginning at
the Southeast corner of Lot 1, Block 1, Park View Subdivision Third Addition,
thence on an assumed bearing of West 758.50 feet, thence South 11 degrees 04
minutes 18 seconds West 180 feet, thence East 478.57 feet, thence North 64
degrees 39 minutes 49 seconds East 97.47 feet, thence North 11 degrees 04
minutes 18 seconds East 100.00 feet, thence East 200.00 feet, thence North 11
degrees 04 minutes 18 seconds East 37.50 feet to the point of beginning.
AND
That part of Lot 2, Block 3, Park View Subdivision Fourth Addition, described as
follows:  Commencing at the Northeast corner of Lot 1, said Block 3, thence on
an assumed bearing of North 11 degrees 04 minutes 18 seconds East along the
East line of said Lot 2, a distance of 37.50 feet to the Southeast corner of Lot 1,
Block 1, Park View Subdivision Third Addition, thence on a bearing of West
93.30 feet to the point of beginning of the tract herein described, thence
continuing on a bearing of West 41.66 feet, thence on a bearing of North 11
degrees 23 minutes 52 seconds East 8.71 feet to its intersection with a line bearing
North 77 degrees 56 minutes 08 seconds West from the point of beginning, thence
on a bearing of South 77 degrees 56 minutes 08 seconds East along the last said
line 40.84 feet to the point of beginning.
AND
That part of lot 2, Block 3, Park View Subdivision Fourth Addition, described as
follows:  Commencing at the Northeast corner of Lot 1, Block 3, thence on an
assumed bearing of North 11 degrees 04 minutes 18 seconds East, along the East
line of said Lot 2, a distance of 37.50 feet to the Southeast corner of Lot 1, Block
1, Park View Subdivision Third Addition, thence on a bearing of West 134.96
feet, thence on a bearing of North 11 degrees 23 minutes 52 seconds East 13.72
feet, thence on a bearing of North 79 degrees 00 minutes 49 seconds West 56.41
feet, thence on a bearing of South 11 degrees 23 minutes 52 seconds West 16.44
feet to the point of beginning of the tract herein described, thence on a bearing of
South 81 degrees 44 minutes 04 seconds West 28.85 feet, thence on a bearing of
South 10 degrees 46 minutes 39 seconds West 4.00 feet, thence on a bearing of
East 27.67 feet to its intersection with a line bearing South 11 degrees 23 minutes
52 seconds West from the point of beginning, thence on a bearing of North 11
degrees 23 minutes 52 seconds East along last said line 8.24 feet to the point of
beginning.
EXCEPTING THE FOLLOWING DESCRIBED TRACT TO-WIT:
That part of Lot 2, Block 3, Park View Subdivision Fourth Addition described as
follows:  Commencing at the Northeast corner of Lot 1, said Block 3, thence on
an assumed bearing of North 11 degrees 04 minutes 18 seconds East along the
East line of said Lot 2, a distance of 37.50 feet, to the Southeast corner of Lot 1,
Block 1, Park View Subdivision Third Addition, thence on a bearing of West
310.30 feet to the point of beginning of the tract herein described, thence
continuing on a bearing of West 448.20 feet to the West line of said Lot 2, thence
on a bearing of South 11 degrees 04 minutes 18 seconds West, along last said

line, 180.00 feet to the South line of said Lot 2, thence on a bearing of East, along last said line 478.57 feet, thence on a bearing of North 1 degree 21 minutes 46 seconds East 176.70 feet to the point of beginning.
AND ALSO EXCEPTING:
That part of Lot 2 Block 3, Park View Subdivision Fourth Addition, described as follows:  Commencing at the Northeast corner of Lot 1, said Block 3, thence on an assumed bearing North 11 degrees 04 minutes 18 seconds East along the East line of said Lot 2, a distance of 18.00 feet to the point of beginning of the tract herein described, thence continuing on a bearing of North 11 degrees 04 minutes 18 seconds East along last said line 19.50 feet to the Southeast corner of Lot 1, Block 1, Park View Subdivision Third Addition, thence on a bearing of West 93.30 feet to its intersection with a line bearing North 77 degrees 56 minutes 08 seconds West from the point of beginning, thence on a bearing of South 77 degrees 56 minutes 08 seconds East, along last said line 91.58 feet to the point of beginning, according to the recorded plat thereof, and situate in Kandiyohi County, Minnesota.

(hereinafter the "Kandiyohi County Property").  True and correct copies of the mortgages

executed contemporaneous with the Equity Agreement are attached hereto as Exhibit B.

9.      At the time Plaintiffs agreed to make the Loan to Defendant, Defendant

submitted to Plaintiffs certain written statements concerning Defendant's financial

condition which led Plaintiffs to believe that Defendant had the ability to repay the Loan

pursuant to the terms and conditions of the Equity Agreement.  True and correct copies of

the personal financial statements indicating Defendant's finances (the "Original Financial

Statements") are attached hereto as Exhibit C.

10.     Upon making the Loan, Defendant submitted a second set of personal

financial statements (the "Supplemental Financial Statements") which revealed that the

Original Financial Statements contained false representations as to Defendant's financial

condition.  True and correct copies of the Supplemental Financial Statements are attached

hereto as Exhibit D.  The Supplemental Financial Statements revealed discrepancies in

the fair market valuations ascribed by Defendant to the properties referenced within the

Original Financial Statements, which valuations formed the basis for Plaintiffs' agreeing to advance funds to Defendant.

11.     Plaintiffs subsequently became aware that the Supplemental Financial Statements also were materially false.  In particular, certain parcels of real property have been listed and/or sold for significantly less than the fair market valuations contained in the Supplemental Financial Statements, as evidenced by the Multiple Listing Service ("MLS") listings for each of the properties.  True and correct copies of the MLS listings are attached hereto as Exhibit E.

12.     At the time Plaintiffs agreed to make the Loan to Defendant, Defendant used certain written statements concerning Defendant's financial condition which were materially false.

13.     Defendant caused the written statements to be made to Plaintiffs with the intent to deceive Plaintiffs and induce them into making the Loan to Defendant.

14.     In an attempt to mitigate their losses following the discovery of Defendant's fraud, Plaintiffs and Defendant agreed that (i) Plaintiffs would assist Defendant in the sale of his Homevestors™ franchise by locating a buyer for the franchise; and (ii) Plaintiffs would locate a buyer for Defendant's real property located on Long Lake in St. Cloud, Minnesota; and (iii) any sale proceeds owing to Defendant would be applied towards his loan with the Plaintiffs.  A true and correct copy of a buy/sell agreement for the Homevestors™ franchise is attached hereto as Exhibit F.  A true and correct copy of email correspondence from Defendant to Plaintiffs dated October 12, 2005 referencing the sale of the Long Lake property is attached hereto as Exhibit G.

15.     Defendant kept the sale proceeds owing Plaintiffs and spent it personally.

At the time Defendant made the promise to pay over such proceeds to Plaintiffs,

Defendant had no intention to honor his promise.

16.     On or about February 17, 2006, Plaintiffs, in a further attempt to mitigate

their damages incurred by making the Loan to Defendant, requested that Defendant

execute various documents giving effect to the intent of the Equity Agreement and which

corrected various defects in the loan documentation (the "Amended Loan Documents").

True and correct copies of the Amended Loan Documents, which include accrued interest

in the amount of $5,400.00, are attached hereto as Exhibit D.

17.     When Defendant again defaulted under the Amended Loan Documents,

Plaintiffs notified Defendant of said default and accelerated the entire indebtedness of

$154,500.00.  A true and correct copy of said notice of default is attached hereto as

Exhibit E.

18.     Despite Plaintiffs' notice of default, the Defendant has not paid or

attempted to pay the indebtedness which is now due and owing to Plaintiffs.

### 11 U.S.C. § 523(a)(2)(A)

19.     Plaintiffs reallege the allegations of paragraphs 1-18 above as if fully set forth

herein.

20.     Pursuant to 11 U.S.C. § 523 (a)(2)(A), a discharge does not discharge an
individual debtor from any debt –

> (2)     for money, property, services, or an extension, renewal, or
>
> refinancing of credit, to the extent obtained by—

false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial

condition;

21.     The above-described circumstances constitute false circumstances under

which Defendant obtained money, property and/or services from Plaintiffs.

22.     Accordingly, pursuant to 11 U.S.C. § 523(a)(2)(A), the above-described

obligations of Defendant to Plaintiffs are nondischargeable because of the false pretenses

under which his debt to Plaintiffs were incurred.

## 11 U.S.C. § 523(a)(2)(B)

23.     Plaintiffs reallege the allegations of paragraphs 1-22 above as if fully set forth
herein.

24.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a discharge does not discharge an

individual debtor from any debt –

        2)      for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained by –

        * * *

        (B) use of a statement in writing—

              (i) that is materially false;

              (ii) respecting the debtor's or an insider's financial condition;

              (iii)on which the creditor to whom the debtor is liable for such money,

                 property, services, or credit reasonably relied; and

              (iv) that the debtor caused to be made or published with intent to deceive.

25.     The above-described circumstances constitute circumstances under which

Defendant obtained money, property and/or services from Plaintiffs by use of a materially false

writing or writings respecting the Defendant's or an insider's financial condition on which

Plaintiffs reasonably relied and that the Defendant caused to be made or published with intent to

deceive.

### 11 U.S.C. § 523(a)(6)

26.     Plaintiffs reallege the allegations of paragraphs 1-25 above as if fully set forth

herein.

27.     Pursuant to 11 U.S.C. § 523(a)(6),  a discharge does not discharge an individual

debtor from any debt–

>   for willful and malicious injury by the debtor to another entity or the property of another

>   entity[.]

28.     The above-described circumstances constitute circumstances under which

Defendant willfully and maliciously converted Plaintiffs' funds for Defendant's personal use.

29.     Accordingly, pursuant to 11 U.S.C. § 523(a)(6), the above-described obligations

of Defendant to Plaintiffs are nondischargeable.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

1.     Determining that Defendant's debt to Plaintiffs is nondischargeable pursuant to 11

   U.S.C. § 523(a)(2)(A);

2.     Determining that Defendant's debt to Plaintiffs is nondischargeable pursuant to 11

   U.S.C. § 523(a)(2)(B);

3.     Determining that Defendant's debt to Plaintiffs is nondischargeable pursuant to 11

   U.S.C. § 523(a)(6);

4.      For Plaintiffs' reasonable costs and fees; and

5.      For such other and further relief as the Court deems just and equitable.

**MANSFIELD, TANICK & COHEN, P.A.**

Dated:  January 29, 2007                          By: /e/ Jamie R. Pierce
                                                           Thomas G. Wallrich (#213354)
                                                           Jamie R. Pierce (305054)
                                                           1700 U.S. Bank Plaza South
                                                           220 South Sixth Street
                                                           Minneapolis, MN  55402-1409
                                                           (612) 339-4295

                                                 **ATTORNEYS FOR PLAINTIFFS**